UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| KEVIN MORRIS-BEY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 1:18-cv-00416-JRS-MPB |
| DAVID LIEBEL, et al. | ) |  |
| Defendants. | ) |  |

**Order Granting Motion for Summary Judgment and Directing Entry of Final Judgment**

Plaintiff Kevin Morris-Bey, an inmate of the Indiana Department of Correction ("IDOC"), brings this action pursuant to 42 U.S.C. § 1983 against David Liebel and Jeffrey Hinshaw alleging that the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment. The RLUIPA claim is proceeding against Mr. Liebel in his official capacity as a claim for injunctive relief. The First Amendment claims are proceeding against both defendants in their individual capacities. The defendants moved for summary judgment and Mr. Morris-Bey was directed to respond, and given ample time to do so, but he has not responded. The motion is therefore now ripe for ruling. For the following reasons, the motion for summary judgment is granted.

**I. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal

quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hospitals Corp.* 892 F.3d 887, 893 (7th Cir. 2018).

The plaintiff failed to respond to the defendants' summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Statement of Facts

At all times relevant to this lawsuit, Mr. Morris-Bey was confined at the Correctional Industrial Facility. Dkt. 44-1, p. 8. Mr. Morris-Bey has practiced Islamism since he was eight

years old. *Id.* He uses religious oils five times a day during his daily prayers. *Id.*, p. 11. Pursuant to IDOC policy, an inmate may possess up to two ounces of religious oils, regardless of religious preference or lack thereof. Dkt. 44-2, ¶ 4. However, IDOC policy states that religious oils may be purchased only through commissary. *Id.* This is to ensure that the oils do not come in glass bottles, are not flammable, and do not have strong scents because those scents could be used to mask the presence of contraband such as tobacco or marijuana and may be offensive to others or cause allergic reactions. *Id.* ¶ 5. IDOC has made great efforts to find religious oils that satisfy these concerns. *Id.*, ¶ 6. The religious oils sold on commissary are packaged in clear plastic bottles and are designed for use in prison. *Id.*, ¶ 7. The oil will char, but not burn. *Id.* And the oil contains no animal byproducts and is certified halal. *Id.*

Before April 2017, Mr. Morris-Bey would buy religious oils from commissary every few months. Dkt. 44-1, p. 14. He was notified in April of 2017 that religious oils were unavailable from commissary. *Id.*, p. 16. He was not able to purchase religious oils from commissary from April 2017 to approximately September 6, 2017. Dkt. 44-1, p. 16. This inability to purchase religious oils from commissary occurred because some of the oils were testing positive for synthetic marijuana, also known as K2 or spice, with the field tests used at the facilities. Dkt. 44-2, ¶ 9. From April to June 2017, the Deputy Chief Investigator of IDOC's Division of Investigations and Intelligence tested various religious oils that were sold on commissary. *Id.*, ¶ 10. Nine of the religious oils tested positive for K2. *Id.* The only religious oil that did not test positive was the unscented hypo-allergenic oil. *Id.* More formal lab results showed that these were false positives. *Id.*, ¶ 11. Allowing an item known to trigger a positive result to be purchased from commissary could call into question any positive test. *Id.*, ¶ 12. Additionally, inmates could use

the oil containers to conceal liquid K2 and the investigators at the facility would not be able to determine if it was religious oil or actual K2. *Id.*

In June 2017, Mr. Morris-Bey tried purchasing oils from an outside vendor called HalalCO. Dkt. 44-1, p. 18. The bottles that he purchased from the outside vendor were confiscated by the mailroom because the oils were not approved. Dkt. 44-1, p. 20.

In May or June 2017, Mr. Morris-Bey spoke with Defendant Hinshaw about commissary not having any religious oils. *Id.*, p. 23. Defendant Hinshaw is the chaplain at Correctional Industrial Facility. *Id.* p., 22. Defendant Hinshaw informed Mr. Morris-Bey that the religious oils were unavailable from commissary because the oils tested positive for a synthetic drug. *Id.*, p. 24. Defendant Liebel is the Director of Religious Services at IDOC. Dkt. 44-2, ¶ 1. Mr. Morris-Bey's only communication with Defendant Liebel about this issue was during the grievance appeal processes. Dkt. 44-1, p. 27-28.

Mr. Morris-Bey believes the defendants should have provided some sort of accommodation such as releasing the confiscated oils or providing temporary religious oils to prevent interruption in his daily prayers. Dkt. 44-1, 26-27, 29.

### III. Discussion

The defendants move for summary judgment on Mr. Morris-Bey's RLUIPA and First Amendment claims.

A. *RLUIPA*

RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015).

To establish a claim under RLUIPA, the plaintiff must show that his religious exercise was substantially burdened. *Id.* at 862. Here, the religious exercise at issue is his use of religious oils. The defendants assume for purposes of summary judgment that his inability to purchase religious oils for five months imposed a substantial burden on his ability to practice his religion. Therefore, the burden shifts to the defendants to show that the denial of religious oils was "(1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that compelling governmental interest." *Id.* at 863 (quoting § 2000cc-1(a)).

The defendants argue the compelling governmental interest here is the safety and security of the prison and that the temporary halting of the sale of the oils was the least restrictive means of promoting that interest. First, the prison does have "a compelling interest in staunching the flow of contraband into and within its facilities." *Id.* This is one of the reasons the IDOC allows only the religious oils sold through commissary. In addition, the defendants have demonstrated other safety interests in its restriction on religious oils, including ensuring the oils are not in glass bottles, do not burn, and do not have a strong scent.

Next, the defendants must also show that the restriction on the sales of religious oils was the least restrictive means of furthering the interests described above. "'The least-restrictive-means standard is exceptionally demanding," and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Id.* at 864 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014). As the defendants explain, the religious oils sold on commissary are designed for use in prison. Dkt. 44-2, ¶ 7. The defendants argue that when the religious oils sold on commissary began testing positive for synthetic marijuana, IDOC had to stop selling the oils while additional tests were conducted because inmates could use the oils to conceal contraband.

*Id.*, ¶ 12. Once those tests were conducted, commissary resumed selling the hypo-allergenic oil that did not test positive for synthetic marijuana. *Id.*, ¶ 13. In sum, the defendants have shown that the IDOC supplied through commissary religious oils that met their safety criteria. When these oils failed to meet security criteria, the IDOC stopped selling the oils only for long enough to allow further testing and then began selling them again. The defendants therefore have met their burden to show that the least restrictive means were used to achieve the goals of safety and security. They are therefore entitled to summary judgment on the RLUIPA claim.

B. *First Amendment*

The defendants also seek summary judgment on Mr. Morris-Bey's First Amendment claim. Under the First Amendment, in the prison setting, any restriction on an inmate's ability to practice his religion must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). While the courts must defer to prison officials' policy-making expertise, the reasonableness of their regulation depends on (1) whether there is a valid, rational connection to a legitimate governmental objective; (2) whether there are alternative means of exercising the right that remain open to the inmate, (3) the impact an accommodation of the asserted right would have on the guards and other inmates, and (4) whether there are obvious alternatives to the restriction. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

Again, the defendants argue that their interest in prison security was a legitimate governmental objective. First, as previously discussed, a prison "has a compelling interest in staunching the flow of contraband into and within its facilities." *Holt*, 135 S. Ct. at 863. The defendants have shown that limiting religious oils to those purchased on commissary is connected to this interest. Second, the defendants do not argue that there were alternative means of exercising Mr. Morris-Bey's right to use religious oils. Third, the defendants do argue that allowing the

plaintiff to purchase religious oils other than through commissary would have a negative impact on the prison because such oils have not survived the screening process the IDOC applied to the oils that can be purchased through commissary. Therefore, it is unknown whether the oils will burn, whether they have a strong scent that may mask the presence of contraband, may contain alcohol, or may test positive for synthetic marijuana. Fourth, there is no evidence in the record that there are obvious alternatives to the restriction. While Mr. Morris-Bey attempted to purchase oils from a different source, there is no evidence that oils from that source would have met the criteria that the defendants have shown are necessary to prevent the introduction of contraband into the facility and other security interests.

These four factors contemplate a judgment by the Court regarding the reasonableness of the defendants' conduct under all the circumstances reflected in the record. *Turner*, 482 U.S. at 89. An evaluation of the *Turner* factors here compels the conclusion that the defendants' conduct was reasonable in these circumstances – stopping the sale of religious oils for a brief time to ensure that those oils did not contain contraband was reasonably related to a legitimate governmental objective. Accordingly, the defendants are entitled to summary judgment on the First Amendment claim.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [44], is **granted**. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 9/19/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KEVIN MORRIS-BEY
105158
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
Amanda.Fiorini@atg.in.gov

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov

Matthew Stephen Koressel
INDIANA ATTORNEY GENERAL
matthew.koressel@atg.in.gov